NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JULIUS JOACHIM OHUMOLE,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 24-884

Agency No.
A099-213-862

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 2, 2025
Pasadena, California

Before: GILMAN, M. SMITH, and VANDYKE, Circuit Judges.[**]

Petitioner Julius Joachim Ohumole (Ohumole) seeks review of a Board of

Immigration Appeals (BIA) decision denying Ohumole's motion to reconsider

and/or reopen another BIA decision affirming a decision by an Immigration Judge

(IJ) denying Ohumole's application for relief pursuant to the Convention Against

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Ronald Lee Gilman, United States Circuit Judge for the
Court of Appeals, 6th Circuit, sitting by designation.

Torture (CAT).[1]  We have jurisdiction under 8 U.S.C. § 1252, and we dismiss the petition in part and deny it in part.

1.  We assume without deciding that the IJ and BIA incorrectly aggregated Ohumole's CAT theories, such that the determination that Ohumole would not likely be tortured was not supported by substantial evidence.  However, even a CAT claimant who will be tortured must show that their "pain or suffering" would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).  If substantial evidence shows that Ohumole would not likely be tortured by or with the acquiescence of the Nigerian government, he is not entitled to CAT relief even if he will likely be tortured by someone else.  If so, correcting the allegedly erroneous aggregation analysis would change nothing,[2] and such errors made by the BIA do not warrant reversal when they are harmless.  *See Zamorano v. Garland*, 2 F.4th 1213, 1228 (9th Cir. 2021).  Ohumole raises other challenges to the finding he would not likely be tortured, but those alleged errors are harmless for the same reason unless Ohumole prevails on

---

[1] Earlier in his proceeding, Ohumole sought asylum and withholding of removal, but those avenues of relief are no longer at issue.

[2] Ohumole's opening brief does not argue that the BIA and IJ failed to correctly aggregate his theories of acquiescence.  Ohumole has waived any potential claim of error on this ground.

acquiescence.

2. The determination that Ohumole would not be tortured by or with the acquiescence of the Nigerian government is supported by substantial evidence. Ohumole argues that "a correct analysis of [his] CAT claim would have demonstrated that the Nigerian government acquiesces in a private actor's torturous conduct in two key ways." Neither is persuasive.

First, Ohumole contends the Nigerian government "is unable and unwilling to shield its people from both the metastasizing violence of Islamists . . . and that of rogue actors in the country's south." Although torture occurs in Nigeria, that does not compel a finding that the Nigerian government acquiesced in it. For example, the Nigerian government has not been able to eradicate some of the groups Ohumole fears will torture him, but it is actively fighting a war against them. Also, even if Nigerian officials have acquiesced in torture against some others, that would not compel the inference that they would likely acquiesce in torture against Ohumole. Instead, Ohumole "must show that any risk of torture is particularized" to him. *Colin-Villavicencio v. Garland*, 108 F.4th 1103, 1115 (9th Cir. 2024). He has not done so.

Second, Ohumole contends that "Nigerian laws . . . affirmatively persecute[] LGBTQIA+ community members, therefore laying a foundation for others to commit torturous acts." However, as the IJ noted, "harassment and discrimination

are not torture." Although "LGBT[QI]A+ individuals in Nigeria face harassment and discrimination by both society and the government," that does not mean the IJ had to find that the Nigerian government would acquiesce in the torture of its LGBTQIA+ citizens. Substantial evidence review is deferential, and the BIA's decision must stand "unless the evidence compels a contrary result." *Aleman-Belloso v. Bondi*, 128 F.4th 1031, 1039 (9th Cir. 2024) (quoting *Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016)).

3. "[W]e have no jurisdiction to review the BIA's sua sponte authority under 8 C.F.R. § 1003.2(a)." *Lona v. Barr*, 958 F.3d 1225, 1232 (9th Cir. 2020). Nor is this a case where "legal or constitutional error . . . is apparent on the face of the BIA's decision[.]" *Id.* at 1234. The BIA simply concluded that "the respondent has not established an exceptional situation warranting sua sponte reopening," and we would be speculating if we concluded that the BIA made a legal or constitutional error. We therefore dismiss the petition in this regard.

4. Ohumole contends that the Notice to Appear (NTA) sent to him was defective, and that a defective NTA deprives the immigration court of jurisdiction over the subsequent removal proceeding. However, as Ohumole acknowledges, this court has already rejected this argument. "A defective NTA does not affect the immigration court's subject matter jurisdiction." *United States v. Bastide-Hernandez*, 39 F.4th 1187, 1190 (9th Cir. 2022) (en banc) (cleaned up).

5. We deny Ohumole's motion for judicial notice (Dkt. 20). We have taken notice of "dramatic foreign developments" when they were "so troubling, so well publicized, and so similar to the earlier coups [which had led to the petitioner's persecution] that we would be abdicating our responsibility were we to ignore the situation." *Gafoor v. INS*, 231 F.3d 645, 656–57 (9th Cir. 2000), *superseded by statute on other grounds as stated in Parussimova v. Mukasey*, 555 F.3d 734, 739–40 (9th Cir. 2009). Even if Ohumole's new evidence was unavailable at the time of the BIA's decision, the evidence reflects only a continuation of existing activities, not dramatic new developments.

**PETITION DISMISSED IN PART** as to sua sponte reopening and **DENIED IN PART** as to the remainder of the petition.[3]

---

[3] The motion to stay removal (Dkt. 33) is **DENIED**. The temporary stay of removal shall remain in place until the mandate issues.